# In the United States Court of Federal Claims

No. 09-640
Filed: July 23, 2010
**UNPUBLISHED**

*********************************************
|  |  |
|---|---|
| | * |
| | * |
| ROXANN J. FRANKLIN-MASON, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |
| | * |
| | * |

*********************************************

**Bobby B. Stafford**, Law Office of Raby & Stafford, Alexandria, Virginia, Counsel for Plaintiff.

**Reginald Thomas Blades, Jr.**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

## MEMORANDUM OPINION AND FINAL ORDER

**BRADEN,** *Judge.*

For the reasons discussed herein, the United States District Court for the District of Columbia mistakenly transferred this case to the United States Court of Federal Claims.

## I.    RELEVANT FACTUAL BACKGROUND.[1]

### A.    Plaintiff's Employment History And Past Equal Employment Opportunity Commission Complaints Against The United States Department Of The Navy.

In September 1978, after earning a bachelor's degree from the University of the District of Columbia, Roxann J. Franklin-Mason ("Plaintiff") was hired as a General Schedule ("GS") 5

---

[1] The facts cited herein were derived from the October 27, 2009 Amended Complaint ("Compl.") and the attached exhibits ("Compl. Ex. 1-6").

employee within the United States Department of the Navy ("Navy"), as a Statistical Assistant in the Office of the Comptroller, Statistics Division, of the Military Sealift Command.  Compl. ¶¶ 2, 80-81.  Thereafter, Plaintiff worked for the Navy, achieving the position of GS-12 Statistician. *Id.* at ¶¶ 2, 164, 167.[2]

On January 29, 1988, Plaintiff reported to the Equal Employment Opportunity Commission ("EEOC") that she was denied selection for a GS-13 Statistician vacancy, because of discrimination based on race and gender.  *Id.* at ¶¶ 5, 115 (EEOC Case No. 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X).  On May 24, 1988, Plaintiff filed a formal complaint with the EEOC, alleging that the Navy required that she complete an assignment on short notice and failed to intervene with co-worker harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").  *Id.* at ¶ 6.  On February 13, 1989, Plaintiff filed a second EEOC action, alleging race and gender discrimination, because she was required to provide excessive medical documentation for a medical leave of absence without pay and then received a "notice of proposed removal," based upon a change in her prior approved leave.  *Id.* at ¶ 7 (EEOC Case No. 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X).

On August 11, 1989, Plaintiff was constructively discharged from the Navy.  *Id.* at ¶¶ 2, 8.  On October 26, 1989, Plaintiff initiated a third action in the EEOC, alleging that the Navy discriminated against her based on race and gender and her discharge was a reprisal for initiating prior EEOC actions.  *Id.* at ¶ 8 (EEOC Case No. 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X).  Thereafter, the Naval Civilian Personnel Center ("NCPC") conducted an internal investigation, concluding that race and gender were determinative factors in Plaintiff's non-selection to the GS-13 Statistician position.  Compl. Ex. 1 at 6, 17.  Although the Navy "offered legitimate, nondiscriminatory reasons" for this personnel decision, the NCPC investigation concluded that "[t]hese proffered reasons were found to be pretext to mask intent to discriminate."  *Id.* at 17.

After the findings of the NCPC were issued, Plaintiff requested a hearing before the EEOC.  Compl. ¶ 9.  On August 14, 15, and 18, 1995, an administrative hearing was held, pursuant to Title VII.  *Id.* at ¶ 10; *see also* Compl. Ex. 2 at 2.  On July 3, 1996, an EEOC Administrative Law Judge issued a decision finding that the Navy unlawfully discriminated against Plaintiff on the basis of race and gender for some, but not all of the allegations.  Compl. Ex. 2 at 3, 69-70.  The EEOC Administrative Law Judge recommended: reinstatement; retroactive promotion to GS-14 status; back pay and front pay with interest; attorney's fees and costs; and expunging Plaintiff's personnel records.  *Id.*[3]

---

[2] Although Plaintiff was promoted from a GS-5 to a GS-12 Statistician, on several intervening occasions she asserts that she was not promoted as quickly as the merit promotion plan provided or did not receive a positive employee evaluation rating from supervisors.  Compl. ¶¶ 82-92.

[3] Pursuant to the EEOC's regulations, the Administrative Law Judge's decision is a final decision binding on the Agency 60 calendar days after the Agency's receipt of the recommended decision unless within the time period the Agency itself issues a final decision adopting, rejecting, or modifying the recommended decision.  29 C.F.R. § 1614.109(g).

On September 6, 1996, the Navy issued a Final Agency Decision, rejecting the EEOC Administrative Law Judge's decision, stating that Plaintiff "failed to prove, by the preponderance of the evidence, that [Plaintiff was] discriminated against in the matters alleged.  No corrective action [was] authorized or warranted."  Compl. Ex. 3 at 30.  Plaintiff was advised of her right to file a Notice of Appeal with the EEOC within 30 calendar days or file a lawsuit in a United States District Court within 90 calendar days.  *Id.* at 31-32.

**B.      Plaintiff's Complaint In The United States District Court For The District Of Columbia.**

On October 31, 1996, Plaintiff filed a Complaint in the United States District Court for the District of Columbia ("District Court"), pursuant to Title VII, "challenging the Navy's long-standing discriminatory employment practices in failing to promote Plaintiff on the basis of her race and gender; creation of a hostile work environment; [and] retaliatory conduct, reprisal and constructive discharge in violation of 42 U.S.C. § 2000e–5(f) through (k) and § 2000e–16(a)."  Compl. ¶ 13.

On April 7, 1999, a Stipulation of Settlement was filed with the District Court.  Compl. Ex. 6 at 1.  On April 12, 1999, Plaintiff returned to the Navy as a GS-13, Step 10 Senior Financial Analyst/Advisor to the Financial Manager of the Naval Fleet Auxiliary Force.  Compl. Ex. 6 at 1 ¶ 2.  On April 15, 1999, the Stipulation of Settlement was entered by the District Court as a Final Order.  Compl. Ex. 6 at 6.

**C.      The April 15, 1999 Final Order Entered By The United States District Court.**

The April 15, 1999 Final Order provided, in relevant part, that: (1) Plaintiff would be appointed as a GS-13, Step 10 Senior Financial Analyst/Advisor to the Financial Manager of the Naval Fleet Auxiliary Force (Compl. Ex. 6 at ¶ 2); (2) the Navy would pay Plaintiff $400,000 for back pay and $50,000 in attorney's fees (*Id.* at ¶ 3); (3) the Navy would credit Plaintiff with 240 hours of annual leave and 1200 hours of sick leave (*Id.* at ¶¶ 4, 5); (4) Plaintiff was eligible to receive, and should be considered for, any and all educational benefits afforded to personnel employed at the same grade and level (*Id.* at ¶ 9); (5) Plaintiff was not required to work directly for or be supervised by William Savitsky, Robert Hoffman, or Donald Petska in the normal course of her duties, nor could any of those individuals be involved in the formal evaluation process of Plaintiff's work performance or in subsequent decisions made regarding Plaintiff's employment status (*Id.* at ¶ 10); and (6) the Navy would expunge from Plaintiff's record any information or reference to the notice of proposed removal, all medical records associated with the proposed removal, as well as the absent without leave status from February 28, 1988 to June 6, 1988 (*Id.* at ¶ 11).

In exchange, Plaintiff agreed to "irrevocably release" and "forever discharge" all claims from the beginning of Plaintiff's employment with the Navy to the date of the Final Order.  *Id.* at ¶ 15.  Such release and discharge, however, did not apply to any causes of action "arising from Plaintiff's re-employment."  *Id.*  The Final Order also contained an integration clause, providing that "this . . . contains the entire agreement between the parties and supersedes any and all previous agreements, whether written or oral, between the parties relating to this subject matter."

*Id.* at ¶ 16.   Although the District Court dismissed the October 31, 1996 Complaint with prejudice, the Final Order provided that "[s]hould any party breach the terms of this Stipulation of Settlement, the other party shall have the right to seek enforcement of the Stipulation with the Court including, but not limited to, monetary damages." *Id.* at ¶ 22.

### D.      Plaintiff's Post-April 15, 1999 Allegations.

On December 10, 1999, Plaintiff filed an Emergency Motion in the District Court, claiming that the Navy failed to comply with multiple provisions of the April 15, 1999 Final Order.   Compl. ¶ 28.   On April 24, 2000, Plaintiff filed an Emergency Motion For Withdrawal Of Stipulation And For Hearing On Motion To Enforce.  *Id.* at ¶ 30.   On May 12, 2000, the District Court: ordered the parties to attempt to resolve the implementation of the Final Order; denied Plaintiff's Motion To Enforce the Final Order, without prejudice; and denied Plaintiff's Motion For Withdrawal Of Stipulation, without prejudice.  *Id.* at ¶ 32.

On May 7, 2001, Plaintiff filed another Motion For Order To Enforce the Final Order. *Id.* at ¶ 36.   On October 24, 2001, after a status hearing, the District Court denied Plaintiff's May 7, 2001 Motion.  *Id.* at ¶ 38.   On November 9, 2001, Plaintiff filed a third Motion To Enforce the Final Order And For Sanctions.  *Id.* at ¶ 39.

On July 7, 2002, the assigned District Court Judge, Emmet Sullivan, recused himself from further proceedings and the case was reassigned to District Court Judge Richard Roberts. *Id.* at ¶ 42.   On January 30, 2003, the case was referred to a United States District Court Magistrate Judge for a report and recommendation on Plaintiff's November 9, 2001 Motion.  *Id.* at ¶ 43.   On September 9, 2003, the Magistrate Judge issued a Preliminary Report and Recommendation that the November 9, 2001 Motion be denied, in part, but stated that an evidentiary hearing was required to resolve the merits.  *Id.* at ¶ 44.   On December 8, 2003, Plaintiff filed a Motion For Reconsideration of the Preliminary Report.  *Id.* at ¶ 48.   On January 28, 2004, the Magistrate Judge vacated the September 9, 2003 Preliminary Report and Recommendation, denied Plaintiff's November 9, 2001 Motion in part, and stayed an evidentiary hearing scheduled for November 21, 2003, pending resolution of Plaintiff's January 28, 2004 Motion for Reconsideration.  *Id.* at ¶ 50.

In June 2004, Plaintiff was constructively discharged from the Navy for the second time. Compl. Ex. 6 at ¶ 2.

On August 1, 2005, the Magistrate Judge ordered the parties to brief the issue of whether the District Court or the United States Court of Federal Claims was the proper venue for Plaintiff's motions to enforce the Final Order.  Compl. ¶ 66.

On March 21, 2006, the Magistrate Judge issued a Report and Recommendation partially denying Plaintiff's November 9, 2001 Motion and stating that Plaintiff should be awarded only nominal damages.  *Id.* at ¶ 74.

On May 22, 2009, the District Court issued a Memorandum Opinion, holding that the court did not have jurisdiction over Plaintiff's claim to enforce the Final Order, because Plaintiff

is seeking monetary damages exceeding $10,000. *Franklin-Mason* v. *Penn*, 616 F. Supp. 2d 97, 101 (D.D.C. 2009). On July 21, 2009, the case was transferred to the United States Court of Federal Claims. Compl. ¶ 79.

## II.   PROCEDURAL HISTORY.

On October 27, 2009, Plaintiff filed a "Transfer Complaint" in the United States Court of Federal Claims, challenging the Navy's employment practices in failing to promote her on the basis of her race and gender. Compl. ¶ 1. The Complaint alleges that the Navy: discriminated against Plaintiff on the basis of gender and race; breached the Final Order entered by the United States District Court for the District of Columbia; created a hostile work environment; and retaliated against Plaintiff for engaging in EEOC activities causing her to be constructively discharged. *Id.* The October 27, 2009 Complaint seeks more than $4,000,000 in damages, including compensation for back and front pay from the time of Plaintiff's alleged constructive discharge to the date of Plaintiff's planned retirement, an annual annuity, compensation for retaliation, and a finding that the Navy discriminated against Plaintiff. *Id.* at 46-47 (Prayer For Relief).

On December 17, 2009, the Defendant (the "Government") filed a Motion For Extension Of Time To File A Response To The October 27, 2009 Complaint. On December 22, 2009, Plaintiff filed a Response. On December 24, 2009, the Government filed a Reply. On December 28, 2009, the court held a telephone status conference to discuss the pending motion. On December 29, 2009, the court granted the Government's Motion For Extension, but informed the Government that the court would not grant any further extensions.

On February 26, 2010, the Government filed a Motion To Dismiss, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("Gov't Mot."). On March 25, 2010, Plaintiff filed a Reply Opposing Defendant's Motion To Dismiss And, In The Alternative, Remand Back To United States District Court For The District Of Columbia ("Pl. Opp."). On April 13, 2010, the Government filed a Reply ("Gov't Reply").

## III.   DISCUSSION.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act, 28 U.S.C. § 1491 (2006). This Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *Id.* § 1491(a)(1). The Tucker Act, however, does not, by itself, confer jurisdiction on the court. *See United States* v. *Testan*, 424 U.S. 392, 398 (1976) ("The Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists."). Therefore, a plaintiff must identify an independent basis by way of a contract, federal statute, regulation, or the Constitution upon which it is entitled to monetary payment from the federal government. *See United States* v. *Mitchell*, 463 U.S. 206, 216-17 (1983) ("The claim must be one for money damages

against the United States and the claimant must demonstrate that the source of substantive law he relies upon can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.") (internal citations omitted); *see also Fisher* v. *United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) ("In order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages.  In the parlance of Tucker Act cases, that source must be money-mandating.") (internal citations and quotations omitted).

## A.   The Court's Resolution.

The October 27, 2009 Transfer Complaint to the United States Court of Federal Claims alleges that the Navy discriminated against Plaintiff on the basis of her gender and race, created a hostile work environment and retaliated against Plaintiff for engaging in EEOC activities. Compl. ¶ 1.  These claims allege violations of Title VII of the Civil Rights Act of 1964 that, *inter alia*, prohibits employment discrimination and discriminatory conduct on the basis of an employee's gender or race.  *See* 42 U.S.C. § 2000e-2 through e-5.  The United States Court of Federal Claims, however, "has no authority to hear, decide, or grant relief for complaints of alleged discrimination under the Civil Rights Act."  *Daniels* v. *United States*, 59 Fed. Cl. 506, 506 (2004).  Claims based on the Civil Rights Act "must be brought in the appropriate United States District Court, not in [the United States Court of Federal Claims], because Congress has given the district courts original and exclusive jurisdiction to decide claims of discrimination under the Act."  *Id.* at 507 (citing 28 U.S.C. § 1343, 42 U.S.C. §§ 1983, 2000e-5(f)); *see also Taylor* v. *United States*, 54 Fed. Cl. 423, 425 (2002) ("Title VII . . . provides the exclusive remedy for race, color, sex, or handicap discrimination claims, and places jurisdictional review in the federal district courts.").  Therefore, the United States Court of Federal Claims does not have jurisdiction to adjudicate these claims.

The October 27, 2009 Transfer Complaint also alleges that the Navy breached the April 15, 1999 Final Order.  Compl. ¶ 1.

The United States Supreme Court has held that federal district courts retain ancillary jurisdiction over the breach of a settlement agreement where "the parties' obligation to comply with the terms of the settlement agreement [was] made part of the order of dismissal."  *Kokkonen* v. *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994).  In this case, that is precisely what happened.  *See* Compl. Ex. 6.  Moreover, the Final Order explicitly stated: "Should any party breach the terms of this Stipulation of Settlement, the other party shall have the right to seek enforcement of the Stipulation with the Court."  Compl. Ex. 6 at ¶ 22.  As such, the District Court specifically reserved jurisdiction over any claims of breach of the Final Order.  *See Kokkonen*, 511 U.S. at 381 (holding that a district court may retain ancillary jurisdiction over breach of settlement claims by "incorporating the terms of the settlement agreement in the order," or by including language "such as a provision 'retaining jurisdiction' over the settlement agreement"); *see also Schaefer Fan Co.* v. *J&D Mfg.*, 265 F.3d 1282, 1286-87 (Fed. Cir. 2001) (holding that a federal district court properly retained enforcement jurisdiction over a settlement agreement, when the order of dismissal stated "pursuant to a confidential settlement agreement" and the order expressly authorized each party to enforce the terms in federal district court).

For these reasons, the United States Court of Federal Claims does not have jurisdiction to adjudicate Plaintiff's claim that the Navy breached the April 15, 1999 Final Order.

Section 1631 of Title 28 of the United States Code provides that if a court does not have jurisdiction, it "shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed." 28 U.S.C. § 1631 (2006). The United States Court of Appeals for the Federal Circuit has held that "there is no per se rule against return of a transferred case by the transferee court," but discourages transfer absent exceptional circumstances, such as where the decision was "clearly erroneous and would work a manifest injustice." *Rodriguez* v. *United States*, 862 F.2d 1558, 1560 (Fed. Cir. 1988). For the reasons discussed, the decision of the United States District Court for the District of Columbia to transfer this action to the United States Court of Federal Claims was "clearly erroneous," as the transferor court is the only forum where Plaintiff may properly seek enforcement of the April 15, 1999 Final Order. Accordingly, the "interest of justice" mandates transfer of this action back to the District Court.

## IV.   CONCLUSION.

For the reasons discussed herein, the Clerk of the United States Court of Federal Claims is directed to transfer this case to the United States District Court for the District of Columbia.

**IT IS SO ORDERED.**

   _s/Susan G. Braden_
**SUSAN G. BRADEN**
**Judge**